# In the
# United States District Court
## For the
## Western District of Wisconsin

THE ESTATE OF ASHLEY DIPAZZA,

    Plaintiff,

                            Case No.  16-cv-60

    v.

CITY OF MADISON,
and JUSTIN BAILEY, and GARY PIHLAJA,
In their Individual Capacities,

    Defendants.

# COMPLAINT

## I.   NATURE OF ACTION

101.   The Estate of Ashley DiPiazza brings this civil action under Title 42 U.S.C. §1983 to obtain appropriate relief for the violation of rights secured to her by the Fourth and Fourteenth Amendments to the United States Constitution, which occurred when members of the Madison Police Department responded to her mental health crisis and potential suicide by shooting and killing her.

## II.   JURISDICTION AND VENUE

A.   **Jurisdiction.**

201.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

B.   **Venue**

202.   The Western District is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of U.S.C. § 1391(b).

## III.   PARTIES

A.   **Plaintiffs**

301.   Plaintiff Estate of Ashley DiPiazza is a legal entity with the capacity to sue and be sued in this Court.

B.   **Defendants**

302.   Defendants Justin Bailey and Gary Pihlaja are natural persons with the capacity to sue and be sued in this Court.

303.   Each of the individual Defendants was a police officer employed by the Defendant City of Madison at all times material to this action.

304. At all times material to this action, each individual Defendant was acting within the scope of his employment within the meaning of § 895.46 Wis. Stats.

305. At all times material to this action, each individual Defendant was acting under color of state law.

306. The Defendant City of Madison is a Wisconsin city with the capacity to sue and be sued in this Court, which was the employer of both individual Defendants when the wrongful acts alleged herein were committed.

### IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. On May 18, 2014, the day she died, Ashley DiPiazza had just turned twenty-six years old.

402. Ashley and her boyfriend Alejandro Ruben Perales-Saunders ("Alex") had moved together into an apartment in a multi-unit building at 1121 MacArthur Road, Apartment #2, on March 15, 2014.

403. In March of 2014, Ashley thought someone had tried to break into the apartment she had just moved into with Alex. She called the police about this, and police responded to inspect her apartment and ensure it was secure.

404. Alex, who was in the Army Reserve, owned a Glock handgun, and after that incident, Ashley and Alex agreed that it would be kept loaded and on the nightstand for her protection.

405. On May 18, 2014, about one a.m., a dispute erupted between Ashley and Alex. Ashley was extremely upset and locked herself in the bedroom with

3

Alex's gun. Alex left the apartment and called the police from a neighbor's apartment to report that Ashley was alone in their apartment with his handgun. Alex called the police at 1:21 a.m.

406. The first Madison police officer arrived on the scene at 1:27 a.m. Over the next half hour, Sergeant Jason Sweeny and the individual Defendants, Justin Bailey and Gary Pihlaja, all of whom were Madison police officers, arrived at 1121 MacArthur Road, along with other Madison police officers.

407. Alex gave the police the keys to the apartment (Apartment No. 2) and informed them that Ashley had been drinking.

408. Sergeant Sweeney tried to reach Ashley by telephone, without success.

409. At 1:36 a.m., Sergeant Sweeney opened Alex and Ashley's apartment door from the hallway.

410. The door from the hallway opened into the apartment's living room. Across the living room, at a distance of approximately seventeen feet ten inches, was the door to the apartment's only bedroom.

411. Ashley, the only person in the apartment, was in the bedroom with the door closed.

412. Initially, Defendant Pihlaja yelled for Ashley to come out of the bedroom with her hands up and without the gun.

413. At 1:42 a.m., Ashley opened the bedroom door, and Defendant Pihlaja could see her standing in the bedroom with a gun to her head.

4

414. Pihlaja raised his long rifle and aimed it at her and told her, "Drop it, drop the gun."

415. Ashley said, "I'm not coming out," and closed the bedroom door, approximately four seconds after she had opened it.

416. Defendant Pihlaja told the other officers at the doorway what he had seen.

417. Sergeant Sweeney requested that a negotiator be sent to the scene, and in response, Officer Cary Leerek was sent to the scene.

418. At 1:45 a.m., Officer Leerek arrived and, from the hallway doorway, yelled out to Ashley.

419. In the hallway doorway, Defendant Bailey was positioned on the right, armed with his handgun.

420. Officer Leerek was on the left, holding a ballistic shield, a clear, portable bulletproof barrier.

421. Defendant Pihlaja was in the center, armed with a rifle.

422. Although the ballistic shield held by Officer Leerek was large enough to provide complete cover for only one officer, and although they knew that Ashley had a gun in her hand, Defendants Bailey and Pihlaja did not position themselves where they would have effective cover.

423. Several supervisors were on the scene, and all supervisors carry ballistic shields in their cars, so there were enough ballistic shields available in the cars,

or nearby, to have protected Defendants Bailey or Pihlaja or both had they chosen to avail themselves of additional equipment.

424. However, the officers did not momentarily pause in their ordering Ashley out of her room, even though she had nowhere else to go, for the purpose of waiting for one or more additional ballistic shields to be brought up.

425. Leerek was able to get Ashley to talk to her through the closed bedroom door.

426. Eventually Leerek persuaded Ashley to open her door a bit so they could hear each other better.

427. At one point, Ashley yelled out that she would only hurt herself and that she would not hurt other people.

428. Ashley told the officers that her boyfriend had cheated on her and that she wanted to see him one last time.

429. Ashley also repeatedly said that she wanted to talk to her dad.

430. All of the officers at the doorway were aware that Ashley was having a mental health crisis.

431. All of them could hear Ashley crying and saying she wanted to speak with her father.

432. While the great majority of what Defendant Pihlaja and Officer Leerek said to Ashley through her bedroom door was intended to induce her to come out of the bedroom, and though the only time any of the officers had seen Ashley since they had arrived she had been pointing a handgun at her head, neither Defendant nor

any other officer on the scene discussed, formulated, or implemented a plan to avoid shooting Ashley, in the event she came out of her bedroom (as she was repeatedly being instructed to do) with the gun still pointed at her head.

433.  After Officer Leerek had been present for less than half an hour, Ashley opened the bedroom door and stepped into the living room with Alex's gun pointed at her temple.

434.  When Ashley came out of her bedroom, the officers could see that her mouth was moving and that she was trying to communicate something to them, but instead of listening to Ashley, Defendants Bailey and Pihlaja simultaneously screamed at her to drop the gun.

435.  Then Defendants Bailey and Pihlaja opened fire, while Ashley was pointing the gun at her own head.

436.  Ashley had never moved the gun from its position of pointing directly at her own head.

437.  Between them, Defendants Bailey and Pihlaja shot Ashley DiPiazza eleven times, including once in the back of her leg. She died at the scene as a result of these gunshot wounds.

438.  Between the time police arrived on scene and the time she was shot, Ashley had not said or done anything to indicate she was contemplating harm to anyone but herself.

439.  To the contrary, the officers had heard Ashley say that she would only hurt herself and that she would not hurt other people.

440. Defendants Bailey and Pihlaja's decisions to create a situation -- through their deployment in the doorway with no, or insufficient cover, through their orders to Ashely, and through their lack of any plan – in which, if Ashley DiPiazza opened the door to her bedroom while still holding the gun to her head, they would inevitably shoot her, were unreasonable and were substantial factors in causing the unreasonable shooting death of Ashley DiPiazza.

441. Defendants Bailey and Pihlaja used excessive, unreasonable, deadly force when they shot Ashley to death.

## V.   BASIS OF LIABILITY

### A.   Unreasonable Seizure: Fourth Amendment.

501. Defendants Bailey and Pihlaja committed a violation of the Fourth Amendment's prohibition on unreasonable seizures when they shot and killed Ashley DiPiazza.

### B.   Statutory Indemnification Liability of Defendant

502. The Defendant City of Madison is liable for the unlawful acts of the individual defendants because they were acting within the scope of their employment pursuant to Sec. 895.46, Wis. Stats.  The Plaintiff does not allege at this time that the wrongful acts alleged herein were carried out pursuant to a custom or policy of the Defendant City of Madison.

## VI.   DAMAGES and EQUITY

### A.   Compensatory Damages

601.   By virtue of the unlawful actions alleged above, Ashley DiPiazza suffered physical pain, emotional anguish, financial losses, the loss of her life, and other damages for which her estate should be compensated in an amount deemed just by the Court.

### B.   Punitive Damages

602.   Because the acts of the individual Defendants herein alleged were carried out maliciously or with reckless disregard for the Ashley DiPiazza's fundamental rights, the Plaintiff also seeks an award of punitive damages against each of the individual Defendants to deter them and others similarly situated from committing similar wrongful acts in the future.

## VII.   CONDITIONS PRECEDENT

701.   All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.   JURY DEMAND

801.   Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant judgment against the Defendants, awarding compensatory damages in an amount that will fairly compensate the Plaintiff for Ashley DiPiazza's injuries and death; punitive damages in amounts that will justly punish the individual Defendants for their actions; and costs, attorneys' fees and litigation expenses as well as any further relief this Court deems just and lawful.

Dated this Monday, January 25, 2016.

Respectfully submitted,

Estate of Ashley DiPiazza,
by Personal Representative Joseph DiPiazza

Plaintiff, by

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
ANDREA J. FARRELL
State Bar No. 1064773
131 West Wilson Street, Suite 1200
Madison, WI 53703
Phone: 608 283-6001
Fax: 608 283 0945
E-mail: jsolson@scofflaw.com

/s/ Jeff Scott Olson
_____

Jeff Scott Olson

ATTORNEYS FOR PLAINTIFF