IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF ASHLEY DIPIAZZA,

                         Plaintiff,                    OPINION AND ORDER

    v.

                                                             16-cv-060-wmc

THE CITY OF MADISON and JUSTIN BAILEY,
GARY PIHLAJA, and CARY LEEREK,
in their individual capacities,

                         Defendants.

---

      Before the court are two discovery motions: (1) plaintiff's motion to "exclude fraudulently obtained and unlawfully disseminated medical records and halt any further dissemination" (dkt. #77); and (2) defendant's motion to compel discovery (dkt. #93). Both of these motions concern disputes surrounding the same set of documents: Ashley DiPiazza's privileged and confidential medical records. The parties briefed both motions and the court held a telephone hearing on April 14, 2017. After hearing further argument from both parties, the court issued oral rulings as to some of the more pressing discovery issues and objections. To provide the parties more clarity as they prepare for trial, the court now renders this more definitive, comprehensive ruling. In summary, for the reasons explained below, the court declines to give plaintiff the broad relief sought in its motion, and it also declines to order further discovery by defendants into plaintiff's privileged mental health records. Consistent with the court's oral rulings at the April 14 hearing, and as elaborated further below, some additional caveats are noted respecting the treatment of this information at trial.

OPINION

In dueling motions, plaintiff is seeking to exclude from use at trial (and otherwise restrict) and defendants are seeking to compel Ms. DiPiazza's mental health records from a period of several years before her death. An oddity of the latter motion is that defendants are already in possession of many of these documents, having obtained them by other means. Although trial is near and questions of use and admissibility of evidence already in defendants' possession are inevitable, both motions are fundamentally premised on the scope of proper *discovery*, and the court will endeavor to treat them as such. For purposes of logical simplicity in resolving the issues raised by both motions, the court will address defendants' motion to compel first.[1]

I. **Defendants' Motion to Compel**

Defendants seek to compel the production of plaintiff's mental health records, which they claim are relevant to and implicated by plaintiff's planned presentation of damages, in the event the case reaches that stage.[2] Plaintiff denies that there is any relevance, but also contends that even if the records are relevant, they are nonetheless protected from discovery by the doctor- and/or psychotherapist-patient privilege.[3]

---

[1] As a preliminary matter, the discovery cutoff in this case was March 31, 2017, but defendants served their (first) written discovery requests on February 27, 2017, with plaintiff's response due just a few days before the cutoff date. As explained during the April 14 telephonic hearing, therefore, defendants' discovery was served timely, and their subsequent motion to compel is timely as well.

[2] The parties are in agreement that the mental health records are irrelevant to the issue of defendants' liability and will not be introduced in the first phase of trial.

[3] While these medical records appear to be privileged and confidential under Wis. Stat. §§ 146.82 and 905.04, it is not state law but the federal common law of privilege that governs. Fed. R. Evid.

Defendants, in turn, argue that that privilege is waived (or at least pierced in a limited sense) if plaintiff's case for damages puts Ms. DiPiazza's mental or emotional health at issue.

While the court continues to question how these records could be properly introduced and admitted at trial, that is not the question now before the court, though it soon will be. Again, the initial question here is not one of admissibility, but whether defendants should be permitted to conduct *discovery* into these records. *See Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930-31 (7th Cir. 2004) (noting the broad scope of discovery and permissive standard for relevance under Rule 26(b)(1)). Although the medical records at issue here appear to fall within the scope of the federal psychotherapist-patient privilege, *Jaffee v. Redmond*, 518 U.S. 1 (1996), the Court of Appeals for the Seventh Circuit has held that the privilege can be waived: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (citing *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).[4]

What this commonsense principle means in practice, however, and how it applies to the specific facts of a particular discovery dispute, varies. Courts have generally

---

[501]. Accordingly, the court's analysis will focus on federal case law applying the relevant rules and principles of privilege. *See* discussion, *infra*.

[4] Acknowledging the serious "invasion of privacy" necessarily entailed by allowing any discovery into privileged medical records, the Seventh Circuit nevertheless pointed out that "[t]he judge can seal the plaintiff's psychiatric records and limit their use in the trial (which is public) to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records." *Oberweis Dairy*, 456 F.3d at 718.

adopted three approaches in evaluating claims that plaintiffs have opened the door and allowed defendants to discover their privileged mental health records: a "broad" approach to waiver holds that plaintiffs place their mental or emotional condition at issue and thus waive the privilege simply by making *any* claim for emotional distress damages; by contrast, a "narrow" approach holds that the privilege is waived only when plaintiffs affirmatively inject their mental or emotional state into the case by actually relying on the substance of a psychotherapist's diagnosis or communications, offering expert medical testimony to prove their emotional damages, or where the emotional distress claims are especially "severe"; a third approach, which has been adopted by a greater number of district courts in this circuit and elsewhere, though not yet the Seventh Circuit itself, attempts to stake out a more pragmatic "middle ground." *See Awalt v. Marketti*, 287 F.R.D. 409, 417-18 (N.D. Ill. 2012) (collecting cases).

This third, pragmatic approach (which arguably falls closer in substance to the "narrow" than the "broad" view) is both described and exemplified by the *Awalt* court:

> The majority view—or the "middle ground" approach—to waiver of the psychotherapist-patient in cases in which the plaintiff seeks damages for emotional distress carefully evaluates the kind of emotional distress claimed before concluding whether the privilege has been waived or not. The weight of authority holds that a party waives the privilege by claiming damages in situations where that party plans to introduce evidence of psychological treatment in support of their damages claim at trial. Thus, the privilege may be waived where the plaintiff seeks to put into evidence psychological treatment in support of their claim for damages, but it is not waived where the plaintiff does not seek damages for emotional distress by introducing evidence that is not specific, concrete, or for which they received counseling as a result.

*Id.* at 417-18 (internal citations omitted); *see also Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007) ("[W]here a plaintiff merely alleges 'garden variety' emotional distress and

neither alleges a separate tort for the distress, [nor] any specific psychiatric injury or disorder, [n]or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege.") (quoting *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 n.8 (D. N.J. 2000)).

In *Awalt*, the plaintiff brought federal claims under 42 U.S.C. § 1983, as well as state law claims, seeking damages for loss of consortium and severe emotional distress after her husband died in the custody of county jail officials. Defendants in turn sought discovery of a broad range of medical records regarding both Mr. Awalt's and Mrs. Awalt's history of mental health conditions – some, but not all, of which was privileged. *Awalt*, 287 F.R.D. at 411-12. Because Mrs. Awalt made no claims for any damages regarding her husband's mental state, and her own claims for emotional damages were "garden variety," for which she did not put her own specific psychological state, treatment, or records at issue, the court denied defendants' motion to compel discovery as to the bulk of their medical records. Id. at 417-23. The court did, however, order the discovery of medical records of Mrs. Awalt's treatment for domestic abuse by Mr. Awalt, because they were relevant to the plaintiff's claim for damages for loss of consortium and severe emotional distress under Illinois *state law*. *Id.* at 423-24.[5]

In a wrongful death claim brought under state law by a surviving spouse or relative, any claimed damages are likely to include loss of society or loss of consortium.

---

[5] Importantly in that case, the court held the records were *not* subject to the psychotherapist-patient privilege in the first place. As the court observed in *Awalt*, 287 F.R.D. at 423, while the federal common law recognizes a psychotherapist-patient privilege, it has not established a general physician-patient privilege or a comprehensive privilege for medical records. *See, e.g.*, *United States v. Bek*, 493 F.3d 790, 801-02 (7th Cir. 2007); *Northwestern Mem'l Hosp.*, 362 F.3d at 926.

5

Thus, in a case such as *Awalt*, the length and quality of the decedent's life, as well as the subjective value of a lost relationship, may be essential to the plaintiff's case for damages, making psychological evidence highly relevant. By contrast, "in a section 1983 action, the estate may recover damages for loss of life, conscious pain and suffering experienced by the decedent prior to death, and punitive damages." *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1190 (7th Cir. 1985). Indeed, both parties seem to agree that damages for loss of society or loss of consortium are *not* recoverable in a § 1983 suit based solely on federal law.

In particular, plaintiff acknowledges that evidence of Ms. DiPiazza's earnings, financial value, life expectancy, health, or "habits of industry, sobriety, and thrift" is irrelevant to plaintiff's claim for damages, and thus, would be inadmissible at trial. (Dkt. #105, at 15.) Plaintiff's brief further represents that:

> Plaintiff will not make arguments that Ms. DiPiazza's life should be valued based on her youth, her health, how much money she made or was likely to make in the future, the fact that her parents loved her and have now lost a primary caretaker for their inevitable end-of-life needs – such argument would be appropriate only in a wrongful death case. Plaintiff will argue that the loss of Ms. DiPiazza's life deserves an award of damages because all human life is sacred, has an intrinsic value, and is protected by the Constitution.

(Dkt. #105, at 18.)

If plaintiff held firmly to this representation, it would be an easy decision for the court to preclude discovery by defendants into Ms. DiPiazza's mental health records. *See Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 993-94 (N.D. Ill. 2010) (denying motion to compel mental health records and finding no waiver of psychotherapist-patient privilege in physical disability case where plaintiff "repeatedly,

6

unambiguously, and explicitly disavowed" any claims or evidence of mental or emotional injury, including any claim for "garden variety" emotional damages). But there are two complicating factors that make the decision in this case a closer call.

First, plaintiff is still seeking what it would characterize, à la *Awalt*, as "garden variety" emotional distress damages "limited to those that naturally flow from the defendants' alleged misconduct." (Dkt. 105, at 5-6) (quoting *Awalt*, 287 F.R.D. at 418). Specifically, these damages are limited to the emotional distress experienced by Ms. DiPiazza in the last few moments of her life. *Bass*, 769 F.2d at 1190. Defendants have identified no case holding that such a limited showing of emotional damages is enough to waive the psychotherapist-patient privilege, and the court is not persuaded that it should order discovery into privileged mental health records under the so-called "broad" approach to waiver described in *Awalt*, 287 F.R.D. at 417, on that limited damage claim alone. Under that approach, plaintiff would have waived the privilege and opened the door to discovery of her mental health records simply by claiming generic damages for "emotional anguish" in the amended complaint (dkt. #10, at 11). That notion of waiver is too sweeping.

The second, and more difficult, complicating factor is that some of the testimony plaintiff now proposes to present in its damages case comes close to putting Ms. DiPiazza's mental and emotional state at issue more generally. In contrast to the unambiguous disavowal of emotional-state evidence that made *Kronenberg* a relatively simple case, 747 F. Supp. 2d at 993-94, and contrary to the representations in their brief as quoted above, counsel for plaintiff at the April 14 hearing also stated that plaintiff

7

intends to have some of Ms. DiPiazza's friends and family testify "briefly" in its damages cases "just to introduce the jury to Ashley," and also stated that her parents might talk about "who Ashley DiPiazza was as a person," including giving the jury an idea of the things she enjoyed doing.

This evidence arguably exceeds "garden variety" emotional damages, raising the question whether plaintiff's presentation of damages may "inject a new factual or legal issue into the case" that fairly opens the door to defendants' discovery of privileged material. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). More specifically, defendants question whether plaintiff is planning on introducing testimony that goes to the nature and quality of Ms. DiPiazza's life, while at the same time arguing that defendants are barred from discovering and presenting evidence about her mental state that might effectively rebut that very portrayal and characterization. The court might conceivably wait to see if plaintiff chooses to waive the privilege by wading too far into these matters, as "waiver is based upon the obvious principle of fairness that a party 'cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues.'" *Kronenberg*, 747 F. Supp. 2d at 989-91 (quoting *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999)). "Of course, a plaintiff cannot invoke the psychotherapist-patient privilege during discovery and then at trial seek to introduce the very evidence the discovery of which he resisted on privilege grounds." *Id*.

Defendants' concern is thus a legitimate one, and the court may be required to draw sharper boundaries before trial as to what themes may be emphasized in plaintiff's

potential case for damages and what evidence may be introduced. As of now, however, the court is not persuaded that plaintiff has gone so far as to waive Ms. DiPiazza's privilege and permit discovery by defendants into her mental health records.

At this point at least, the court is not prepared to find that plaintiff is "cherrypicking" by relying on certain pieces of mental health evidence while trying to exclude others, or otherwise seeking "an unfair tactical manipulation of the privilege . . . [to] gain a litigation advantage." *Koch*, 489 F.3d at 390–91 (internal quotation and citation omitted). To avoid any uncertainty, however, plaintiff will not be allowed to introduce any evidence of Ms. DiPiazza's psychological treatment, conditions, or symptoms, and will certainly not rely on any privileged communications or sources. At most, plaintiff's proposed case for damages may touch only tangentially on the same general subject matter – the nature or quality of Ms. DiPiazza's life[6] – as her privileged and confidential medical records document in far greater specificity. To the extent that is the case, as the court already ruled during the April 14 hearing, defendants will be free to cross-examine any of plaintiff's potential damages witnesses at trial, as well as ask any questions regarding their personal knowledge of Ms. DiPiazza's psychological or medical health – without actually referencing her mental health records. As such, defendants have provided insufficient justification for the court to order formal discovery of the privileged material itself, and so the court will deny their motion to compel.

---

[6] As already noted, plaintiff's ability to proffer such evidence to support its claim for damages under § 1983 is extremely limited in the first place, and the court will issue specific pretrial rulings in that regard as necessary.

## II. Plaintiff's Motion to Exclude

Having thus denied defendant's motion to compel plaintiff's privileged medical records, the court must address the subset of those documents that defendants already obtained through means outside of this litigation. What relief is actually being sought in plaintiffs' motion to "exclude fraudulently obtained and unlawfully disseminated medical records and halt any further dissemination" is less than clear, as is the legal basis for plaintiff's belief that it is entitled to such relief. What *is* clear is that defendants obtained *some* of Ms. DiPiazza's mental health records from the Madison Police Department, which turned over its file on Ashley DiPiazza to defense counsel, and that defendants disclosed these documents to plaintiff pursuant to their discovery obligations in May 2016.

Thus, finally, the Madison Police Department (through one or more of its agents) may have acted improperly in turning privileged and confidential medical records over to counsel for the defendants for use in this case. If so, however, that is the subject of another lawsuit or complaint. Given the absence of evidence, or even allegations, that defendants or their counsel sought or solicited this material in bad faith – instead of simply receiving it along with the rest of the case file on Ms. DiPiazza that the MPD decided to produce – this court is not in a position to award any sanction or relief in this case. Nor is the court inclined to "claw back" those medical records on plaintiff's behalf on incomplete facts, especially given plaintiff's failure to initiate such a complaint now, almost a year after defendants properly disclosed their possession of the documents.

To the extent plaintiff is simply seeking to prevent defendants from using this

information at trial, however, the court will grant the following relief, consistent with its rulings denying defendants' motion to compel. Defendants may not at trial refer to Ms. DiPiazza's mental health records, condition, or treatment, and they may not represent any knowledge of the same, unless plaintiff opens the door.[7]

ORDER

IT IS ORDERED that:

1) Plaintiff's motion to exclude medical records (dkt. #77) is DENIED.

2) Defendant's motion to compel discovery (dkt. #93) is DENIED.

Entered this 5th day of May, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[7] At the April 14 hearing, an electronic transcript of which has been filed under seal (at dkt. #157), the court ordered defendants' counsel to identify and provide copies of the mental health records in its possession. The court is in receipt of that information, which it will keep under seal, and to which it may refer as needed should any additional rulings become necessary before or during trial.