IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF ASHLEY DIPIAZZA,

                Plaintiff,

v.

THE CITY OF MADISON and JUSTIN BAILEY,
GARY PIHLAJA, and CARY LEEREK,
in their individual capacities,

                Defendants.

OPINION AND ORDER

16-cv-60-wmc

---

This case is set for a jury trial beginning on May 15, 2017. In advance of the final pretrial conference scheduled for May 9, the court addresses plaintiff's *Daubert* motion to strike defendants' "police practices" expert Charles Huth (dkt. #87) under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons set forth below, the court will grant that motion in part and deny it in part.

## I. *Daubert* Review

"Determining the true facts of a case often requires 'the application of some scientific, technical, or other specialized knowledge.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 808 (7th Cir. 2012) (quoting Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The court's role under Rule 702 is to act as a "gatekeeper," ensuring that proffered expert testimony satisfies these requirements. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

In exercising this gatekeeping role, the Seventh Circuit has condensed Rule 702 into a three-part analysis: the court must determine whether the purported expert witness is qualified; whether his or her methodology is reliable; and whether the testimony will assist the jury in deciding a relevant issue. *Myers v. Ill. Cent. R. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). Moreover, the proponent of expert testimony bears the burden of establishing it meets this three-prong test. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

More specifically, the court first "must look at each of the conclusions he draws individually to see if he has the adequate education, skill, and training to reach them." *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016) (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). Extensive academic training, practical expertise, or professional or other experience are all proper bases from which a witness may draw specialized knowledge sufficient to qualify as an expert in a particular area. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). As to the second part of the gatekeeping analysis, "the test for reliability is necessarily flexible. Although *Daubert* identifies factors the court may consider when determining whether an expert's testimony is reliable—whether the expert's technique has been tested, subjected to peer review and publication, analyzed for known

2

or potential error rate, or is generally accepted—the 'list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'" *Estate of Robinson ex rel. Irwin v. City of Madison*, No. 15-CV-502-JDP, 2017 WL 564682, at *8 (W.D. Wis. Feb. 13, 2017) (quoting *Kumho Tire*, 526 U.S. at 141). Finally, "expert evidence is relevant if it helps the jury understand a matter beyond the knowledge and experience of a layperson." *Id.* (citing *Daubert*, 509 U.S. at 591-92).

In performing its review, the court may not undertake to resolve disputed facts or make credibility determinations. The "*Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley*, 689 F.3d at 805. At the same time, "[i]t is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. As a general rule, accordingly, an expert may not offer legal opinions." *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013).

## II. Policing Expert Charles Huth

Here, plaintiff challenges the report and opinions of defendants' police practices expert, Charles "Chip" Huth, and moves to strike his testimony in its entirety, or in the alternative, to exclude certain opinions. Charles Huth is a captain in the Kansas City (Missouri) Police Department, where he now serves as staff inspector. He has approximately 25 years of experience in policing, including various patrol, tactical response, leadership, operational, and command roles. He reports having "planned, coordinated and executed over 2500 high-risk tactical operations" during his career. In addition, Huth has

an associate's degree in police science, as well as several other educational and professional certifications, and has served as a firearms/defensive tactics instructor and provided other relevant police training. (Dkt. #37-1, at 1-3.) He also appears to be a recognized author on these subjects.

In this case, Huth offers six opinions in his report:

(1) Officers Bailey and Pihlaja's use of deadly force was consistent with contemporary police training, tactics and customs given the totality of the circumstances.
\*\*\*
(2) Officer Carey Leerek's actions during her interaction with Ms. DiPiazza were consistent with contemporary police training, tactics, and customs given the totality of the circumstances.
\*\*\*
(3) Officers Bail[e]y, Pihlaja and Leerek reasonably interpreted Ms. [Di]Piazza's actions as an imminent threat.
\*\*\*
(4) When the use of deadly force is objectively reasonable given the totality of the circumstances confronting a law enforcement officer(s), less-lethal law enforcement tools, to include less-lethal projectiles, are not considered alternatives to deadly force. Employing a "bean bag" shotgun to respond to the threat of deadly force by Ms. DiPiazza would have been disproportionate and unreasonable.
\*\*\*
(5) Officers Bailey, Pihlaja and Leerek had to rely on the observable actions of Ms. DiPiazza, not her stated intent, to determine what type of threat she posed to their safety.
\*\*\*
(6) The number of rounds fired by Officers Bailey and Pihlaja was reasonable given the dynamics of the situation.

(Dkt. #37, at 2-9.) In Huth's report, he describes the bases for each of these opinions and also includes some sub-opinions and supporting observations.

While purporting not to question Captain Huth's qualifications as a policing expert generally, plaintiff nevertheless contends that Huth's testimony is so unreliable, speculative, baseless, and biased throughout that it should be excluded entirely. In

4

particular, plaintiff contends that Huth's "obvious bias in favor of the officers and against the decedent" -- because he himself is a police officer who testifies as a police practices expert on behalf of other officers and their departments -- is enough to disqualify him as an expert. (Dkt. #87, at 24-25.) While certainly a topic for robust cross examination, the court disagrees that this alone is sufficient to disqualify Huth's testimony all together, at least absent evidence of blunt and open bias. *See Stachniak v. Hayes*, 989 F.2d 914, 925 (7th Cir. 1993) (district court was correct to disqualify expert who admitted he would "probably" weigh his opinion in favor of the police officers as against suspects or arrestees). Indeed, the mere fact that an expert works for an employer similar to one of the defendants, or works in the same field as other defendants, would disqualify many experts who are in a unique, if not the best, position to assist a lay jury in understanding unfamiliar scientific, technical or specialized knowledge.

The court also agrees with defendants that Huth's opinions on police practices are, at least as a general matter, based satisfactorily and reliably on his extensive professional experience in the field. *See Kumho Tire*, 526 U.S. at 148 ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from ... specialized experience.'"); *Estate of Robinson*, 2017 WL 564682, at *10 ("An expert in professional practices is not a scientific expert that applies rigorously scientific methods. Such experts describe professional standards and identify departures from those standards.") (citing *W. By & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997)). To the extent Huth has familiarized himself with the facts of this case, analyzed the officers' actions, compared those actions to standard police practices as

informed by his experience, and rendered opinions as to how they measure up, his methodology is sufficiently reliable and his expert testimony is admissible.

In particular, Huth's opinions (1) and (2) meet this standard as a whole. Although the bases he provides in his report could be more helpful, and the explanations themselves contain some inadmissible opinions and observations, which the court addresses below, Huth's opinions that the actions of each of the three, individual officers named as defendants in this case were "consistent with contemporary police training, tactics, and customs" on the night of May 18, 2014, are sufficiently well-founded and reliable to be admissible. (Dkt. #37, at 2-5.) While methodically criticizing internal and logical inconsistencies in Huth's opinions on police practices (dkt. #87, at 10-18, 30-42), plaintiff will again be free to highlight these issues on cross-examination to undermine Huth's testimony before the jury, but this is also not a sufficient basis for the court to exclude the testimony under *Daubert*.

The court is concerned that Captain Huth is relatively inexperienced as an expert *witness*, and he seems to have trouble understanding that his role is not to *resolve* factual disputes, but rather to express expert opinions based on a set of undisputed or assumed facts. Equally concerning is his arguable testimony that his training of officers is inconsistent with that of the Madison Police Department, or worse still, settled constitutional law. However, the court agrees that most of these exchanges are due to the linguistic gymnastics, as well as argumentative and defensive tone, in his deposition, for which plaintiff's counsel and the witness were equally responsible. The court is confident that defense counsel will work with Captain Huth to keep him on the path of his written

report and the subjects the court allows to go forward in this opinion and order, even if he feel baited to go further by the questions of plaintiff's counsel. At the same time, the court expects plaintiff's counsel to adhere to a far stricter standard of relevance at the trial itself.

Even as to opinion (1), there are sub-opinions that appear to extend beyond the scope of Captain Huth's expertise, particularly in the second and third paragraphs on page 4 of his report, in which he purports to opine on what officers Bailey and Pihlaja were personally perceiving, feeling and choosing to act upon. That is not his role, but the role of the jury, and to the extent he purports to be offering those opinions, they are excluded as invading the role of the jury. The difference is between opining what a properly trained officer might do under an assumed set of facts, like those here, and the legality of what these individual officers actually did.[1]

Plaintiff's *Daubert* challenge to many of Huth's subsequent opinions and sub-opinions have equal substance. In particular, plaintiff contends that some of these opinions impermissibly wade into areas outside Huth's base of knowledge and expertise, and others impermissibly opine on credibility issues and legal standards. These contentions require closer analysis.

An expert's opinion "is not objectionable just because it embraces an ultimate issue." Fed. R. Civ. P. 704(a). Indeed, such testimony may be especially relevant and helpful to a

---

[1] Captain Hurth also makes a number of assumptions as to the facts known to these two defendants at the time they acted. While he can certainly assume facts upon which his opinions will depend, provided there is a factual basis for the jury to ultimately reach them (e.g., that Ms. DiPiazza "suddenly" advanced toward them), he cannot assume knowledge by the defendants that the evidence would not allow a reasonable juror to reach (e.g., comments made to the dispatcher that were not relayed to officers on the scene).

fact-finder. *Jimenez*, 732 F.3d at 721. Even so, "the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" *Id.* (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997)). Of particular importance here, "the Seventh Circuit has upheld the exclusion of expert testimony regarding the reasonableness of force in excessive-force cases." *Thomas v. Landrum*, No. 11 C 09275, 2014 WL 11370447, at *1 (N.D. Ill. Mar. 18, 2014) (citing *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006)). *See also Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (observing that expert's properly admitted testimony regarding whether officer's tactics were consistent with standard police practices may be deemed relevant to reasonableness inquiry undertaken by the jury).

Huth's opinion (3) appears to go beyond this limit. The ultimate legal inquiry in this case -- whether the officers' use of deadly force against Ms. DiPiazza was justified -- turns entirely on whether the officers reasonably perceived an imminent or immediate threat of death or great bodily harm to them or others. (*See* Op. & Order, dkt. # 91, at 15-18.) Huth's opinion that the officers "reasonably interpreted Ms. [Di]Piazza's actions as an imminent threat," (dkt. #37, at 6), provides a direct and conclusive answer to that question, applying the relevant legal standard to the facts of the case in a manner that again invades the province of the jury, especially when you read his underlying, muddled justification for it, both in his report and deposition testimony. Huth's specialized experience and expertise regarding police practices allow him to render an opinion that could appropriately assist the jury in making that ultimate determination, as he does in opinions (1) and (2) with respect to what a well-trained officer would perceive as an

imminent or immediate danger, but it would be more likely to prejudice and mislead than to be helpful for Huth to opine whether or not these individual defendants "reasonably interpreted" Ms. DiPiazza's actions as such. Accordingly, Huth may not opine that Ms. DiPiazza in fact posed -- or that these officers reasonably interpreted her actions to pose -- an imminent or immediate threat of death or great bodily harm. *See Estate of Robinson*, 2017 WL 564682, at *10, *15.

For avoidance of doubt, no expert witness will be allowed to offer any opinions regarding whether Ms. DiPiazza or her actions posed an imminent threat or danger to the lives or bodies of the defendants or others, or whether these officers reasonably perceived or interpreted it as such. Nor may any expert witness opine about whether the threat or danger posed by Ms. DiPiazza was "actual" or "immediate" (as opposed to merely "potential") or otherwise characterize its urgency.[2] Similarly, no expert in this case will be allowed to offer any such opinions that so directly express conclusions about these particular officers' actions being reasonable or unreasonable. To the extent any of Huth's opinions or sub-opinions -- or any other experts' opinions or sub-opinions -- purport to do that, they are excluded.

Consistent with these principles, Captain Huth may testify in opinion (4) that under contemporary police training, tactics, and customs, less-lethal projectiles and tools are not considered proportional or viable alternatives to deadly force when officers are faced with a threat of deadly force, like a loaded gun. (Dkt. #37, at 7.) Similarly, Huth

---

[2] The court is not interested in the parties' debate over Huth's use and definition of these words and others that carry distinct and crucial legal meaning. No experts will be allowed to opine as to the definition (legal or otherwise) of these words.

may testify in opinion (5) about how officers are trained to assess a threat and determine an armed subject's intent based on the subject's observable actions or words, and he may opine further that the defendants conduct comported with standard police practices. *Id.* at 8-9. With respect to both opinions, however, he shall *not* opine about whether Ms. DiPiazza's "actions would lead a reasonable officer to conclude she posed a danger to [them or] others," or whether the defendants "could reasonably believe" based on their assessment of the threat of Ms. DiPiazza's intent that she "posed an imminent deadly threat to their safety." *Id.*

Finally, while Huth may testify in opinion 6 as to the number of rounds fired by Officers Bailey and Pihlaja being consistent with contemporary police practices and training given the dynamics of the situation they faced, *id.* at 9-10, he must again refrain from opining whether the defendants acted *reasonably*. Huth is also excluded from testifying about the technical and medical effects such rounds have on a human body, as he has offered no physiological credentials or other qualifications to opine on such matters.[3]

This leaves a few, "sub-areas" where plaintiff has raised legitimate objections to Huth's testimony. *First*, the court agrees with plaintiff that Huth's opinion that "suicidal" and "homicidal" tendencies are not functionally distinguishable -- because a person in crisis can "rapidly vacillate" between a desire to self-harm and to harm others (dkt. #37, at 5-6) -- is inadmissible. Huth has not laid a proper foundation or base of scientific knowledge or expertise for such opinions to be reliable, so they are excluded. *See Zenith Elecs. Corp. v.*

---

[3] Unless disclosed in his report, Captain Huth will also not be allowed to bolster his opinions with so-called accepted "definitions," "studies," "empirical" data or training materials or practices.

*WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term.").

*Second*, the same reasoning applies to his opinions about "heuristics" or more broadly as to how human beings tend to think and behave, as well as his opinions about "auditory exclusion," "selective attention," or "selective blindness," that may corroborate the defendants' testimony that they did not hear certain things at the time or do not remember hearing them now. *See Estate of Robinson*, 2017 WL 564682, at *16 (excluding opinion of police practices expert who "has no expertise in the memory and recall issues he discusses; he only summarizes studies he has read").

The court might consider allowing Captain Huth to testify as to an officer's training in what he describes as "heuristics," but without using that term, which suggests a scientific or pseudo-scientific underpinning that he is neither qualified to opine on, nor is likely to be meaningful to a lay jury.[4] However, even if the other opinions were proper -- and even if the court were not persuaded by plaintiff's objections to Huth's testimony on these matters at his *deposition* (*see* dkt. #87, at 42-46) -- the opinions would still be excluded because they were not disclosed in Huth's *expert report*. Nor did defendants file a supplemental report even after objections were raised at his deposition. To clarify, *no* expert will be allowed to offer opinions, or the basis for those opinions, unless set forth in his or her report, even if disclosed during the expert's deposition. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641-42 (7th Cir. 2008) ("[A] party that intends to rely upon an expert witness's testimony is required to furnish by a date set by the district court a report

---

[4] If he wishes, Huth may use a more practical euphemisms, such as "rule of thumb" "educated guess" or "intuitive judgment."

containing, among other information, 'a complete statement of all opinions' the retained expert will provide, 'and the basis and reasons for them.' . . . Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony.") (quoting Fed. R. Civ. P. 26(a)(2)(B)(I) and (a)(2)(C)); *Estate of Robinson*, 2017 WL 564682, at *17).

*Third*, and finally, plaintiff's objections to Huth's testimony about Ms. DiPiazza's "decision" to come out of the bedroom and about statements or other information regarding her expression of suicidal intent being "worthless" (dkt. #45-48), were also not disclosed in Huth's report, coming out instead at the time of his deposition. Moreover, the substance of the latter (and seemingly more consequential) issue about Ms. DiPiazza's intent has already been excluded by the court's ruling on Huth's opinion (5) above. For avoidance of all doubt: as with respect to legal opinions, no expert will be allowed to opine directly on anyone's credibility, including Ms. DiPiazza's.

ORDER

IT IS ORDERED that plaintiff's *Daubert* motion to strike defendants' "police practices" expert Charles Huth (dkt. #87) is GRANTED IN PART and DENIED IN PART as set forth above.

Entered this 5th day of May, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge